# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JULIE BLANCHARD AND            CIVIL ACTION
SOPHISTICATED SALADS, L.L.C. DBA
SOPHISTICATED CARE & GRILL

VERSUS                       NO.  06-4023

GREGORY LONERO, INDIVIDUALLY        SECTION "K"(3)
AND IN HIS OFFICIAL CAPACITY, AS A
DULY COMMISSIONED LAW ENFORCEMENT
OFFICER; ET AL

## ORDER AND OPINION

Before the court are the "Motion for Summary Judgment" filed on behalf of defendants Gregory Lonero, in his official capacity as a Jefferson Parish law enforcement officer, Michael Pizzolato, Michael Miller, and Jefferson Parish Sheriff Newell Normand (as legal successor to original defendant Harry Lee)(Doc. 88) and the "Motion for Summary Judgment" filed on behalf of defendant Gregory Lonero, in his individual capacity (Doc. 185).  Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS defendants' motions and dismisses all of plaintiffs' claims with prejudice.

## FACTUAL BACKGROUND

Gregory Lonero owned the property located at 2309 David Drive in Metairie, Louisiana.  On or about April 6, 2005, Julie Blanchard, as sole stockholder and representative of 10-40 Diner, Inc., rented the property located at 2309 David Drive from Gregory Lonero.  At the time Julie Blanchard entered into the lease, and at all relevant times thereafter, Gregory Lonero was employed as a deputy with the Jefferson Parish Sheriff's Office ("JPSO").  Article 30 of the lease, entitled "Miscellaneous Provisions" provides in pertinent part  that "[l]essee acknowledges that the restaurant equipment

upon the leased premises belongs to Lessor. Equipment is subject to lessee's use and obligations hereunder including, but not limited to, Lessee's obligation to insure, repair, make replacements, maintain and pay taxes related to such equipment."

At some point on or prior to July 30, 2005, after experiencing maintenance problems with the leased premises, including a leaking roof and a broken air conditioning unit, Julie Blanchard abandoned the leased premises. On July 30, 2005, Sidney Aiavolasti, an officer with the Jefferson Parish Sheriff's Office and a friend of Mr. Lonero's, called Mr. Lonero, who was out of town, and reported that he had seen equipment being removed from the leased premises. Neither Mr. Lonero nor his wife Eileen Lonero consented to the removal of any property from the leased premises or had been advised by Ms. Blanchard that she intended to remove equipment from the leased premises.


After learning from her husband that Julie Blanchard had removed equipment from the leased premises, Eileen Lonero went to the leased premises and observed through the building's windows that contents were missing from the premises. She then called 911; Deputy Michael Pizzolato of the JPSO responded to the 911 call. He spoke with Mrs. Lonero at the leased premises. After learning that Mrs. Lonero did not have a key to the building, Deputy Pizzolato inspected the exterior of the business. He gave Mrs. Lonero a JPSO Property Page to report the missing property. The narrative report of Deputy Pizzolato does not indicate that he entered the premises. However, a July 30, 2005, invoice indicates that a representative of Advance Lock Co. made a service call at Mr. Lonero's building, opened the front door, and changed the lock. Deputy Pizzolato signed the invoice as the "customer."

On August 1, 2005, the JPSO assigned Detective Michael Miller to the investigation.

Detective Miller did not know Greg Lonero. Detective Miller met Mr. Lonero at the building, and they walked through the property. During that meeting Mr. Lonero gave Detective Miller a copy of the lease and a list of the equipment he determined to be missing from the premises. Additionally, Mr. Lonero told Detective Miller that Reserve Officer Kenny Guidry, who dated Julie Blanchard's roommate Kathleen Frost, had told him that Ms. Blanchard had stored the missing property at a storage center on Jefferson Highway. Mr. Lonero gave Detective Miller a statement containing the following colloquy:

> Miller: And it's stipulated accordingly on, in your lease, that these items are suppose to remain inside.
> Lonero: That's correct.
>                         . . .
>
> Miller: Okay, Um, as far as uh, Julie Blanchard, you want to pursue criminal charges against her?
> Lonero: Yes.
>                         . . . .
>
> Miller: Okay. Is this statement true and correct to the best of your knowledge?
> Lonero: Yes.
>
> Miller: And last again, you want to pursue criminal charges against Miss Blanchard for the, uh . . .
> Lonero: Y-...
> Miller: theft?
> Lonero: Yes

Doc. 8, Ex. B.

On August 2, 2005, Detective Miller spoke with Kathleen Frost, who stated that she saw Julie Blanchard and others removing property from the leased premises, and that Ms. Blanchard told her that she had been shut down by the Board of Health, had taken everything out of the premises, rented another storage unit where she already had a storage unit, and put the equipment in the storage unit. That same day Detective Miller went to A-AAA Key Mini-Storage and

obtained the numbers of the storage units rented to Julie Blanchard.

Detective Miller also spoke with Ahmad Abuelhawa.[1] Mr. Abuelhawa had been a previous owner of 10-40 Diner, Inc., which Julie Blanchard purchased in April 2005. At the time Mr. Abuelhawa owned 10-40 Diner, Inc., he operated a restaurant in Mr. Lonero's building on David Drive. Detective Miller took a statement from Mr. Abuelhawa that includes the following colloquy:

> Miller: Okay. Um, did you own any equipment inside the business? Abuelhawa: No
> Miller: Okay. The fryers, the flat grills, the . . . shelving and stuff like that, was that yours?
> Abuelhawa: No.
> Miller: Okay. Who did it belong to?
> Abuelhawa: Greg Lonero.
> Miller: Okay. And when you sold your interest or your, your shares in the corporation to Julie, did you sell her any property?
> Abuelhawa: No, sir.
> Miller: Did she have the understanding that any of this property was suppose to be for her, that she could take it and, do whatever she wanted with it?
> Abuelhawa: No.
> Miller: Was it made clear to her that the property, the equipment, the grills, and, and such, that it belonged to the building and it belonged to Greg Lonero and that you couldn't convey any kind of rights or interests to her and that she had no rights or interests to it? Is that right?
> Abuelhawa: Yes.
> Miller: That she was merely renting the equipment from . . . ,Greg Lonero?
> Abuelhawa: Yes.
> Miller: Is that the same situation with you? You were renting the equipment from Greg Lonero?
> Abuelhawa: Yes.

---

[1] Mr. Abuelhawa's statement is dated August 3, 2005; however, it appears that Detective Miller took the statement before that date. The application for the search warrant includes information obtained from Mr. Abuelhawa, and Judge Zeno signed the search warrant on August 2, 2005.

Doc. 107, Ex. D. p. 2.

Thereafter Detective Miller prepared an application for a search warrant for the storage units

identified as those rented to Julie Blanchard. The affidavit states in pertinent part:

> a) Mrs. Lonero reported that her husband had received a call from a friend who informed him that the tenants at their building on David Drive were moving property out of the building.
>
> b) Mr. Lonero gave Detective Miller a copy of the lease.
>
> c) "Mr. Lonero pointed out that in the lease agreement . . . . in the section titled Article 30 Miscellaneous Provisions regarding equipment that is part of the building and is leased to the lessee. The building and the equipment specified in the lease is owned by Mr. Lonero and is not to be removed or replaced without expressed [sic] permission from Mr. Lonero. Mr. Lonero then pointed out a two page list that details all of the equipment that was part of the lease that was now missing from the interior of the business."
>
> d) "Mr. Lonero stated to me that at no time did he ever give Julie Blanchard or anyone else permission to remove any items of property listed in the lease agreement from the building located at 2309 David Dr. Metairie, LA."
>
> e) "[Mr. Abuelhawa] informed me that he did not own any equipment and informed Julie Blanchard of this fact. He stated that he did not own any equipment, it belonged to the building, therefore he could not convey or sell any interest in the equipment to Julie Blanchard.

Doc. 107, Ex. G. Detective Miller presented the proposed search warrant and the application for

the search warrant to Judge Gerald Zeno who signed signed the search warrant. Detective Miller

did not give Judge Zeno a copy of the lease with the application for the search warrant because he

did not ask to see a copy of the lease. Doc. 107, Ex. H., p.22.

Detective . Miller executed the search warrant on Julie Blanchard's storage units on August

2, 2005, and found property appearing to be the missing restaurant equipment. After opening the

storage unit, Detective Miller called Gregory Lonero to come to the storage facility to identify the property. Mr. Lonero went to the storage facility and identified his property. He also assisted in moving property from inside the unit to outside the unit so that additional property in the unit could be viewed. A JPSO employee photographed the property identified by Mr. Lonero as belonging to him; Detective Miller then released to Mr. Lonero.

On August 3, 2005, Julie Blanchard wrote Mr. & Mrs. Lonero a letter detailing problems she had encountered with the leased premises. The letter states in part, "I just had the opportunity to review the lease form and observed that all of the restaurant equipment belongs to the lessor. I will make arrangements to return. I was working under the impression that all the restaurant equipment belonged to 10-40 diner [sic] Inc." Doc. 189, Ex. D. Gregory Lonero acknowledges receiving the letter and stated that he received it within a few days of when it was written. He also stated that he had his property back by the time he received the letter. Doc. 107, Ex. C, p. 47-51.

On August 4, 2005, Detective Miller prepared an affidavit for an application for an arrest warrant for Julie Blanchard for theft over $500.00 and illegal possession of stolen things over $500.00 in which he stated, among other things:

> Ms. Blanchard agreed to the terms of the lease, which stated that she was to maintain and upkeep the equipment but that she did not own it. It was determined that an estimated $15,000.00 worth of equipment ranging from ovens and stoves to napkins dispensers and utensils had been removed from within the building without any permission or authorization of the lessors.

Doc. 1-2, p.24. A Justice of the Peace signed the arrest warrant on August 4, 2004. That same day, Julie Sanders, a friend of Julie Blanchard, called Detective Miller and advised him that Julie Blanchard had been trying to get in touch with her lawyer who had been out of town. Julie Sanders

also told Detective miller that Julie Blanchard had spoken with her lawyer who had told her to return all items she had taken from the building. Julie Blanchard also told Julie Sanders that August 8 was the earliest date that she could get to return the equipment. Detective Miller told Julie Sanders that a search warrant had already been executed and that the property had already been recovered, but that the search did not recover a flat grill and a char-grill. Detective Miller asked Julie Sanders to have Julie Blanchard give him those items, and told her that he would allow Julie Blanchard to self-surrender to under the arrest warrant. Julie Miller returned the flat grill and char-grill to Detective Miller. During that meeting Detective Miller gave Ms. Blanchard a copy of the search warrant and the return on the search warrant.

After receiving the flat grill and the char-grill, Detective Miller called Mr. Lonero to identify the property surrendered by Ms. Blanchard. Mr. Lonero identified the property as his. Detective Miller then had the property photographed and released it to Mr. Lonero.

On August 15, 2005, Julie Blanchard self-surrendered to Detective Miller who arrested her. Thereafter the district attorney instituted criminal proceedings for theft (La. Rev. Stat. 14:67) against Ms. Blanchard. On January 31, 2007, a state district judge granted Julie Blanchard's motion to quash the bill of information stating in pertinent part:

> Now considering that the State's responses to the accused's Bill of Particulars establish that at all relevant times the kitchen equipment referred to in the outstanding Bill of Information was in the lawful possession of the accused and was not the subject of a theft; and after hearing the argument of counsel, the Court, considering the law to be in favor of the accused, for the reasons orally assigned.

## PROCEDURAL BACKGROUND

Julie Blanchard, 10-40 Diner, Inc. and Sophisticated Salads, L.L.C. d/b/a Sophisticated Café

& Grill filed suit against Gregory Lonero, individually and in his official capacity as a JPSO deputy, Eileen Lonero,[2] Deputy Michael Pizzolato, individually and in his official capacity as a JPSO officer, Detective Michael Miller, individually and in his official capacity as a JPSO officer, Sheriff Harry Lee, individually and in his official capacity as sheriff, seeking damages for a number of civil rights violations under federal and state law. Plaintiffs filed a supplemental complaint in September 2007, adding claims for malicious prosecution, and in January 2008, plaintiffs amended their complaint to add/substitute Newell Normand, individually and in his official capacity as sheriff.

The complaint or supplemental complaint allege the following claims:

- Pursuant to 42 U.S.C. §§1983 and 1988 all plaintiffs allege a violation of their right to be free from unreasonable seizure and search and invasion of their privacy as guaranteed in by the 4th and 14th amendments;

- All plaintiffs allege a state cause of action for the violation of their rights to due process and privacy as guaranteed by the Article I, Sections 2 (due process) and 5 (privacy) of the Louisiana Constitution of 1974;

- Pursuant to 42 U.S.C. §§1983 and 1988 Julie Blanchard alleges under a violation of her right to be free from arrest without probable cause and unlawful detention as guaranteed in the 4th and 14th amendments;

- Julie Blanchard alleges a state cause of action for the violation of her right to be free from arrest and seizure of her person and body as guaranteed by Article I, Sections 2 (due process) and 5 (privacy) of the Louisiana Constitution of 1974 because she was arrested based on evidence obtained during a search where there was no probable cause to search.;

- All plaintiffs allege a claim for malicious prosecution under both federal law (42 U.S.C. §§1983 and 1988) and state law

[2] Plaintiffs have since dismissed all claims against Eileen Lonero.

8

(La. Constitution of 1974 Article I, Section 2 and 5 and La. Rev. Stat. articles 2315 and 2316); and

- All plaintiffs allege a claim for conversion of property seized from Julie Blanchard's storage unit which has not been returned.

In a prior motion for summary judgment filed on behalf of Greg Lonero, in his individual capacity, the Court concluded that plaintiffs abandoned the leased premises prior to August 1, 2005, and dismissed plaintiffs' state and federal claims of unlawful entry of the premises on August 1.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Conners v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Ordinarily, on summary judgment, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law." *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007). "If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing that an issue of material fact exists." *Id.* "In determining whether summary judgment is appropriate, the courts should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the nonmoving litigant." *Boston Old Colony Ins. Co. v. Tiner Associates, Inc.*, 288 F.3d 222, 227 (5th Cir. 2002).

## CLAIMS OF OTHER ACTS OF WRONGFUL CONDUCT

Plaintiffs contend that Gregory Lonero, Deputy Pizzolato, and Detective Miller engaged in wrongful police conduct prior to the events which form the basis of this suit. Additionally, plaintiffs allege that the Sheriff knew or had reason to know that this pattern of wrongful conduct existed and

failed to act to restrain or discipline the other defendants for their wrong ful conduct. Because plaintiffs have not submitted any evidence that Gregory Lonero, Michael Pizzolato, and Michael Miller engaged in wrongful police conduct or violated any citizen's civil rights prior to the dates of the acts alleged herein, all defendants are entitled to summary judgment dismissing these claims.

## OTHER CLAIMS AGAINST DEPUTY PIZZALATO

Plaintiffs allege that Deputy Pizzolato "acted, under color of law, in concert with Defendant Eileen Peters Lonero" and that he acted wilfully and maliciously. Doc. 1, p. 4. Specifically plaintiffs allege that Deputy Pizzolato conducted an unconstitutional search of the leased premises on July 30. Additionally, the supplemental complaint alleges that Deputy Pizzolato made false statements to the District Attorney to further Ms. Blanchard's prosecution, including statements that Ms. Blanchard removed the property with the intent to permanently deprive the Loneros of the property, that the lease provided that specific items of equipment were owned by the defendants, and that the lease specifically prohibited their removal from the premises.

There is no evidence raising a genuine issue of material fact that Deputy Pizzolato searched the leased premises on July 30, 2005. Deputy Pizzolato's report does not establish that he entered the leased premises. The report states that Deputy Pizzolato conducted "a brief inspection of the exterior of the business" and also notes:

> [s]ince the RP [Eileen Lonero] did not have access to the business, a complete inventory of the items missing could not be documented as of the writing of this report. Therefore, RP was presented with a JPSO property page (P-Page) and advised of the needed information required to file the property page once an inventory was complete."

Doc. 1-2.

To support their contention that Deputy Pizzolato unlawfully entered the leased premises,

plaintiffs rely on the receipt from Advance Lock Comopany, which includes a charge to "open front door." Nothing on the invoice indicates that Deputy Pizzolato entered the leased premises. Considering Deputy Pizzolato's report, it is not reasonable to infer from the receipt alone that Deputy Pizzolato entered the premises. Moreover, plaintiffs' counsel conceded at oral argument on Gregory Lonero's first motion form summary judgment on the claims against him in his individual capacity, that Deputy Pizzolato testified during his deposition that he did not enter the premises. The locksmith's receipt is insufficient to raise a genuine issue of material fact concerning whether Detective Pizzolato entered the premises

Plaintiffs have also named Deputy Pizzolato as a defendant in their claims that probable cause did not exist for the issuance of either the search warrant for Julie Blanchard's storage units or for an arrest warrant for Julie Blanchard. There is no evidence that Deputy Pizzolato played any role in the issuance of either the search warrant or the arrest warrant. Nor do plaintiffs allege that Deputy Pizzolato made any false statements, misrepresentations, or omissions in connection with the issuance of the search warrant or the arrest warrant or submit any evidence that Deputy Pizzolato made any false statements that were used to obtain either the search warrant or the arrest warrant.

Nor is there any evidence that Deputy Pizzolato made any false statements to the district attorney. In fact, there is no evidence that Deputy Pizzolato had any contact whatsoever with the district attorney's office concerning either the initiation or continuation of the prosecution against Julie Blanchard. Because plaintiffs have failed to submit any evidence raising a genuine issue of material fact with respect to any claim against Michael Pizzolato, he is entitled to summary judgment on all claims against him.

## CLAIMS AGAINST GREGORY LONERO FOR JULY 30, 2005 SEARCH

Plaintiffs urge that Gregory Lonero participated in the allegedly unlawful search of the leased premises on July 30, 2005. Although Mr. Lonero urges that those claims have been previously dismissed; the record does not reflect such a dismissal. The December 10, 2008, minute entry entered following oral argument on Mr. Lonero's first motion for summary judgment states that the "Court stated that the individual capacity [§]1983 claims relating to entry of August 1, 2005 only is GRANTED, for the oral reasons stated on the record." Doc. 97. Thus, plaintiffs' claims against Mr. Lonero for the search of leased premises on July 30, 2005, remain pending, and the Court will address Mr. Lonero's alternative contention that he is entitled to summary judgment on those claims.

It is undisputed that Mr. Lonero was not present at the building on July 30, 2005. To survive a motion for summary judgment on their claims for the allegedly unlawful search of the leased premises on that date, plaintiffs must present sufficient evidence to raise a genuine issue concerning whether an entry of the premises occurred on July 30, 2005, and evidence that Mr. Lonero acted in some manner constituting "participation" in the entry/search of the premises. As noted previously, plaintiff has not presented any evidence raising a genuine issue concerning whether Deputy Pizzolato entered the premises on July 30. Therefore, Gregory Lonero is entitled to summary judgment on plaintiffs' claims against him alleging entry/search of the leased premises on July 30, 2005.

## CLAIMS FOR AUGUST 1, 2005 SEARCH OF LEASED PREMISES

Considering the Court's prior ruling that Gregory Lonero had "a reasonable belief that there was an abandonment of the premises" prior to August 1, 2005, both Gregory Lonero, in his official

capacity, and Detective Miller are entitled to summary judgment on all claims arising from the August 1 "search" of the leased property.

<u>CLAIMS FOR UNLAWFUL SEARCH OF THE STORAGE UNITS</u>

Urging that no probable cause for the issuance of the search warrant for the storage units existed, plaintiffs allege claims for both state and federal constitutional violations as well as state tort claims resulting from the search of those storage units and the seizure of the property from those units. Plaintiffs also allege that Detective Miller and Gregory Lonero made false statements in order to secure the issuance of the search warrant.

Defendants on the other hand, contend that the search and seizure were executed pursuant to a valid warrant, based on probable cause, and therefore assert that all of plaintiffs' claims based on the alleged illegal search and seizure should be dismissed. Alternativelyly, defendants contend that they are entitled to qualified immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.396 (1982). An officer is entitled to qualified immunity if his actions could reasonably have been thought to be consistent with the civil right he is alleged to have violated. *Richardson v. Oldham*, 12 F.3d 1373, 1380-81 (5th Cir. 1994). To put it another way, "[f]or immunity to apply, the 'actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his action violated then-existing clearly established law.'" *Mesa v. Prejean*, 543 F.3d 264, 269 (*quoting Evett v. Deep E. Texas Regional Narcotics Trafficking Task Force*, 330 F.3d 681, 688 (5th Cir. 2003)). It is well established that "the

qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000)(quoting *Malley Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

When a defendant invokes qualified immunity "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "The issue of qualified immunity is a question of law, but in certain circumstances where 'there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.'" *Mesa v. Prejean*, 543 F.3d at 269, *quoting Presley v. City of Benbrook*, 4 F.3d. 405, 410 (5th Cir. 1993).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated a two-step inquiry for determining whether a government official is entitled to qualified immunity. The *Saucier* analysis required a court to initially examine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. at 2156. "[I]f a violation could be made out on a favorable view of the parties' submission, the next sequential step is to ask whether the right was clearly established." *Id.* The second step of the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* Recently, in *Pearson v. Callahan*, ___ U.S. ___, ___, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), the Supreme Court reconsidered the procedure mandated in *Saucier* and held that "while the sequence [of the two-step analysis] set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Id.* The Supreme Court further opined that judges "should be permitted

to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. Based on the circumstances of this case, the Court exercises its discretion to apply the traditional *Saucier* sequence in examining the issue of qualified immunity.

Probable cause is evaluated under a totality- of- the- circumstances test. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2313, 2332, 76 L.Ed.2d 527 (1983).    Probable cause exists when "sufficient relevant information was included in the affidavit to provide a reasonably competent officer with a basis for concluding that a warrant should issue." *Ham v. Ward*, 226 F.3d 641, 2000 WL 1028977 (5th Cir. 2000)(unpublished).   For purposes of a claim for improper search under §1983 it is not sufficient that a challenged statement in an affidavit supporting an application for a search warrant contains a false statement. "To prevail on a federal claim of unlawful search and seizure, a plaintiff must demonstrate a genuine issue of fact exists as to whether a defendant knowingly provided false information to  secure the search warrant or gave false information in reckless disregard for the truth." *Arceneaux v. Louisiana*, 2008 WL 2369188 (W.D. La. 2008), citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978).   "[I]f an officer, in an affidavit supporting a warrant, makes a false statement knowingly and intentionally, or with reckless disregard for the truth, the false statements must be disregarded in determining whether the affidavit is sufficient to support a finding of probable cause." *Hale v. Fish*, 899 F.2d 390, 400 n. 3 (5th Cir. 1990), citing *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).   The same standard applies to omissions as well as misstatements. *Id.,* citing *United States v. Thompson*, 615 F.2d 329 (1980).

*1) Claims against Detective Miller*

Detective Miller's affidavit contains the following statements:

> Mr. Lonero pointed out in the lease agreement dated April 6, 2005 signed by Greg Lonero and Eileen Loner, Lessor and Julie Blanchard, 10-40 Diner Inc., Lessee and witnesses by Kevin Schriber and Jesse Greese, in the section titled Article 30 Miscellaneous Provisions regarding equipment that is part of the building and is leased to the lessee. The building and the equipment specified in the lease is owned by Mr. Lonero and is not to be removed or replaced without expressed permission from Mr. Lonero. Mr. Lonero then pointed out a two page list that details all of the equipment that was part of the lease that was now missing from the interior of the business.

Doc. 107, Ex. G. Plaintiffs contend that the statement that the equipment cannot be removed or replaced without the expressed permission of Mr. Lonero is an intentionally false statement. Additionally, plaintiffs urge that the affidavit intentionally and falsely implies that the two page list of equipment identified by Mr. Lonero constituted part of the lease. Finally, plaintiffs assert that Detective Miller deliberately omitted information from his affidavit, i.e., the term of the lease, the lease provisions regarding the failure to pay rent, the lease provisions regarding the security deposit, information concerning the status of the lease, the fact that the lessor had not made demand for the lessee to conform to the requirements of the lease as required by the lease, and the fact that a prior entry had been made by Mrs. Lonero into the premises. Plaintiffs also contend that Detective Miller intentionally withheld the lease from Judge Zeno.

Viewed in the light most favorable to plaintiffs, Detective Miller's affidavit in support of the application for a search warrant contains misstatements. The lease does not specifically designate "the equipment" owned by Mr. Lonero, nor was there an attachment to the lease at the time it was signed identifying the equipment belonging to Mr. Lonero which the lessee had the right to use, as Detective Miller implied in his affidavit. Nor does the lease specifically state that the equipment

cannot be removed or replaced without the expressed consent of Mr. Lonero as represented by Mr. Lonero and Detective Miller.

There is no direct evidence that Detective Miller knowingly provided false statements in his affidavit or that he knowingly included misstatements or false statements in the affidavit. It is significant however, that Mr. Lonero provided Detective Miller with a copy of the lease. Review of the lease would have revealed that the expressed permission of Mr. Lonero was not necessary to remove equipment from the building or to replace equipment. Construing the facts in the light most favorable to plaintiffs, there is a basis to conclude that Detective Miller knowingly provided false statements in his affidavit in support of the search warrant.

Therefore, the Court must now examine whether probable cause for the issuance of the warrant existed absent those misstatements. The affidavit correctly sets forth the following:

- the lease provides that equipment on the leased premises is the property of the lessor;
- Gregory Lonero received a call stating that his tenant was removing property from the leased premises;
- Gregory Lonero told Detective Miller that Ms. Blanchard "had abandoned the building since Tuesday because of an air conditioning problem that she didn't want to fix and um she didn't have the money to pay for it;[3]
- Eileen Lonero looked into the leased premises through the windows and saw that much of the equipment stored in the front of the business was missing;
- Gregory Lonero did not give Julie Blanchard permission to remove any equipment from the building;
- Kathryn Frost, Ms. Blanchard's roommate, saw her loading equipment into the back of a truck at the leased premises;
- Ms. Blanchard told Kathryn Frost that she put the property into a storage unit;
- A-AAA Key Mini Storage confirmed that Ms. Blanchard had three storage units at the facility; and
- Ahmad Abuelhawa told Detective Miller that he had told

_____

[3] Doc. 88, Ex. C.

Julie Blanchard that he did not own the restaurant equipment and that the equipment "belonged to the building."[4]

Plaintiffs challenge Detective Miller's representation concerning the information provided to him by Mr. Abuelhawa urging that:

> A review of Abuelhawa's statement . . . reveals that at no time did Abuelhawa tell Detective Miller that he had told Julie Blanchard anything regarding the property. Abuelhawa's statement consists mainly of extremely leading questions from Miller intended to illicit the desired responses. At no time did Mr. Abuelhawa affirmatively tell Detective Miller that he had made any representations whatsoever to Julie Blanchard about the true ownership of the property.

Doc. 107, p. 6.

Although it is true that Mr. Abuelhawa provided only "yes" or "no" answers to Detective Miller's questions,[5] only one of the questions suggested what the answer should be. There is no suggestion or evidence that Mr. Abuelhawa was coached or coerced to provide the "correct" answer, and plaintiffs cite no case law suggesting that answers obtained through the use of leading questions cannot be used to support an application for a search warrant. Plaintiffs' challenge to Detective Miller's statements concerning what he learned from Mr. Abuelhawa lacks merit.

Plaintiffs also point out that prior to executing the affidavit for the search warrant Detective Miller spoke with Kathleen Frost, Julie Blanchard's roommate, who told him that she had been told

_____

[4]Julie Blanchard denies that Mr Abuelhawa told her that he did not own the equipment in the leased premises and that the equipment belonged to the building. That dispute does not preclude a finding of probable cause. Probable cause is based on the officer's knowledge at the time he makes out the affidavit. *See United States v. Cooper*, 949 F.2d 737, 745 (5th Cir. 1991). There is no evidence that Detective Miller had any reason to doubt Mr. Abuelhawa's statements regarding what he told Julie Blanchard.

[5] The relevant portion of Mr. Abuelhawa's statement to Detective Miller is quoted herein above in the "Factual Background" portion of the Order and Opinion.

by Ms. Blanchard that she "took everything out per her attorney and put it in storage." Doc. 107, Ex. A, p.7. Based on that information plaintiffs assert that Detective Miller should have spoken with Ms. Blanchard to determine her intent with respect to moving the equipment from the leased premises. Detective Miller explained at his deposition that he did not speak to Ms. Blanchard prior to executing his affidavit due to his concern that alerting her to the investigation would cause her to move the property. Doc. 189, Ex. I, p.16. Obtaining a statement from Julie Blanchard concerning her "side of the story" might have been advisable; however, Detective Miller's failure to seek such a statement appears to have been objectively reasonable considering his explanation for the failure to contact Ms. Blanchard.

The above cited facts from Detective Miller's affidavit establish probable cause for the issuance of the search warrant despite the misstatements in the affidavit. The lease imposes a duty on the tenant to repair and replace the leased equipment, and that obligation can be reasonably construed to authorize the lessee to remove broken, damaged, or inoperable equipment from the premises for the purpose of having it repaired or replaced. However, given the quantity of equipment missing from the leased premises, it is not reasonable to infer that Julie Blanchard removed all of the missing property for the purpose of repair or replacement.

As for Detective Miller's omissions from his affidavit, the omitted lease provisions as well as the omitted information concerning the status of the lease, although relevant to whether there could be a warrantless entry of the leased premises is irrelevant to the issue of probable cause for a search warrant for the storage units.

In summary, despite the misstatements and omissions in Detective Miller's affidavit, probable cause existed for the issuance of the search warrant. Therefore, no violation of plaintiffs'

constitutional rights to be free from unlawful search and seizure occurred, and Detective Miller is entitled to summary judgment on all claims related to the search of the storage units and the seizure of property from those units.

Alternatively, even if Detective Miller's misstatements and omissions violated plaintiffs' constitutional rights to be free from unreasonable search and seizure, the Court concludes that Detective Miller's actions were objectively reasonable under the circumstances, such that a reasonably competent officer would not have known that his actions violated then-existing clearly established law. Plaintiffs cite no case law mandating that a police officer's affidavit contain complete details of all lease provisions and the status of the lease when a search warrant for a leased premises is requested, nor do they cite any case law supporting their claim that a reasonably competent officer would have known that the challenged statements in the affidavit and the failure to include the items suggested by plaintiffs violated then-existing clearly established law. Detective Miller's actions appear to be objectively reasonable given his knowledge of the facts and the lack of evidence that he had legal training in interpreting leases. Detective Miller is entitled to qualified immunity with respect to this claim.

2) *Claims against Gregory Lonero*

In *Michalik* v. *Hermann,* 422 F.3d 252, 258 n. 5 (5th Cir. 2005) the Fifth Circuit noted:

> The Supreme Court held in *Franks v. Delaware* that an officer may be liable when he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth" that results in a warrant being issued without probable cause regardless of whether he signed the application or was present when the affiant appeared before the judge. 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The Fifth Circuit has interpreted *Franks* liability to also include liability for an officer who makes knowing and intentional omissions that result in a warrant being issued without probable cause. *See Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997),

*abrogated in part by Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

Thus the same standard used to analyze the illegal search and seizure claims against Detective Miller applies in evaluating plaintiffs' search and seizure claims against Gregory Lonero.

In his statement to Detective Miller, Gregory Lonero stated that Julie Blanchard had no right to take the equipment out of the business and that the lease provided that the equipment was to remain inside the building. Additionally, Mr. Lonero knew that the two page list of equipment he provided to Detective Miller on August 1, 2005, had not been attached to the lease when Julie Blanchard signed the lease. However, plaintiffs have not provided any evidence, that Mr. Lonero knew that Detective Miller implied in his affidavit that the two page list of equipment had been attached to the lease to establish, nor have they produced any evidence that Mr. Lonero knowingly and intentionally, or with reckless disregard for the truth, told Detective Miller that Julie Blanchard had no right to remove the equipment from the premises and that the lease provided that the property had to remain on the leased premises. Given the somewhat ambiguous nature of the lease provisions, plaintiffs cannot, assuming *arguendo* that the statements are false, raise a genuine issue of fact that Gregory Lonero knowingly and intentionally or with reckless disregard for the truth made misrepresentations to Detective Miller which were incorporated into Detective Miller's affidavit.

Alternatively, even if plaintiffs have raised a genuine issue with respect to whether Gregory Lonero knowingly and intentionally made misrepresentations to Detective Miller which were incorporated into Detective Miller's affidavit, Mr. Lonero is entitled to summary judgment on all claims related to the search of the storage units. As analyzed hereinabove, probable cause existed for the issuance of the search warrant, and therefore, the search of the storage units was not

conducted in violation of plaintiffs' constitutional rights.

<br>

## CLAIMS FOR UNLAWFUL ARREST

*1) Claim Against Detective Miller*

Julie Blanchard contends that because probable cause for her arrest did not exist, Detective Miller violated her federal and state rights to be free from unlawful arrest. To support her claim, Julie Blanchard contends that Detective Miller's affidavit in support of the arrest warrant does not include any information regarding the lease provisions or any allegations or evidence establishing that she had an intent to permanently deprive Mr. Lonero of the property. Ms. Blanchard also challenges Detective Miller's failure to contact her prior to her arrest to determine her intent with respect to the property. Ms. Blanchard also urges that Detective Miller knew that Ms. Blanchard's roommate had discussed with Julie Blanchard the fact that she had placed the equipment in a storage locker, and that this information weighs against the existence of probable cause.

Probable cause for an arrest exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. Taylor*, 242 F.3d 307, 313 (5th Cir. 2001)(citation and internal quotation omitted). The Court examines the totality of the circumstances to decide "whether there is a fair probability that a crime occurred." *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)(citations omitted). A "requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." *Id.*. "Before determining that probable cause exists, reasonable law officers are not required to resolve every

doubt about a suspect's guilt." *Dilosa v. City of Kenner*, 2004 WL 2984342 *5 (E.D. La. December 16, 2004)(Vance, J.), citing *Gomez v. Atkins*, 296 F.3d 253, 262 (4th cir. 2002)(citation omitted). In fact, "[a]lthough an officer 'may not disregard readily available exculpatory evidence . . . the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause.'" *Id., quoting Gomez v. Atkins*, 296 F.3d at 262. The arresting officer is entitled to qualified immunity if a reasonable person in the officer's position could have believed that he had probable cause to arrest. *Id.*

The challenged omissions do not negate the existence of probable cause for Julie Blanchard's arrest. Had Detective Miller spoken with Julie Blanchard, at most she would have said that she thought she purchased the equipment as part of her purchase of 10-40 Diner, Inc., and, because she believed that she owned the property she could not have intended to permanently deprive Mr. Lonero of the property. Detective Miller would not have been required to credit Ms. Blanchard's statement, and given the clear language of the lease, i.e., that the property belongs to the lessor and not the lessee, Ms. Blanchard's statement that she thought she purchased the property would not have precluded a determination that probable cause existed for her arrest. Moreover, none of the cited omissions are exculpatory.

The affidavit supporting the arrest correctly sets forth that : 1) the lease agreement provides that Julie Blanchard leased the equipment and stoves for her restaurant; 2) the lease provides that Julie Blanchard has the responsibility for maintain and upkeep the equipment, but did not own it; 3) Julie Blanchard removed the equipment from the leased premises; and 4) a search of a storage unit rented to Julie Blanchard revealed that the Unit 157 "was almost completely filled" with equipment taken from the leased premises. Detective Miller's failure to refer in the affidavit to

evidence of Julie Blanchard's intent to permanently deprive Gregory Lonero of the equipment, is not fatal to a conclusion that probable cause for Ms. Blanchard's arrest existed. "Specific intent may be inferred from the circumstances." *Thierry v. Lee*, 48 F.3d 529, 1995 WL 84050 at *3 (5th Cir. 1995), citing *State v. Daniels*, 628 So.2d 63, 66 (La. App. 1st Cir. 1993). A reasonable person could interpret the circumstances in this case to indicate that Ms. Blanchard intended to permanently deprive Mr. Lonero of the equipment. The lease states that the equipment belongs to the owner and a substantial quantity of equipment was removed from the building without the owner's consent. Because Detective Miller had probable cause for Ms. Blanchard's arrest, her arrest did not violate any federal or state constitutional rights. Therefore, Detective Miller is entitled to summary judgment on all claims related to the arrest of Julie Blanchard.

2) *Claims Against Gregory Lonero*

Plaintiffs allege that Gregory Lonero provided false statements to Detective Miller to secure an arrest warrant. The allegedly false statements are the same as those previously discussed in connection with the analysis of the claims involving lack of probable cause for the search warrant. None of the challenged statements appear in the Detective Miller's affidavit in support of the arrest warrant for Julie Blanchard. With respect to the respective rights of the lessee and lessor under the lease, Detective Miller's affidavit states only that:

> As part of the lease agreement, Ms. Blanchard leased the ovens and stoves in order to conduct her restaurant business. Ms. Blanchard agreed to the terms of the lease, which stated that she was to maintain and upkeep the equipment but that she did not own it.

Doc. 1-2, p. 24. Those statements are true. Plaintiff's have not provided any evidence that Gregory Lonero provided false statements to Detective Miller which he included in his affidavit in support of the arrest warrant for Julie Blanchard. Therefore, the Court dismisses all of plaintiffs' claims

against Gregory Lonero related to the arrest of Julie Blanchard.

CLAIMS FOR MALICIOUS PROSECUTION

Julie Blanchard alleges a claim for malicious prosecution against Detective Miller and Gregory Lonero.   Te Fourteenth Amendment does not provide a cause of action for malicious prosecution under.  *Albright v. Oliver*, 510 U.S. 266, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Castellano v. Fragozo*, 311 F.3d 689, 698 (5th Cir. 2002).  There is however, a "long recognized" constitutional right under the Fourth Amendment to be free from malicious prosecution.  *Id.*

The requirements of the state tort law for the state where the offense occurred and the constitutional tort are the same.  *Id.* The elements of a malicious prosecution claim under Louisiana law are:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding.
> (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding.
> (3) Its bona fide termination in favor of the present plaintiff.
>
> (4) The absence of probable cause for such proceeding.
> (5) The presence of malice.
> (6) Damages conforming to legal standards resulting to plaintiff.

*Robinson v. Goudchaux's*, 307 So.2d 287,  289  (La. 1975).  Where all of the other elements necessary to establish malicious prosecution are established, damages are presumed.  *Hibernia National Bank of New Orleans v. Bolleter*, 390 So.2d 842, 844 (La. 1980).

Here the only elements in dispute are whether there was probable cause for the criminal proceeding and whether the defendants actions or omissions actions demonstrated malice.  "The existence of probable cause in any case depends upon the particular facts of that case."  *Culpepper v. Ballard*, 344 So.2d 110, 112 (La. App. 2nd Cir. 1977).  However, "[p]robable cause does not

depend merely upon the actual facts of the case, but upon the defendant's honest belief of the facts when making charges against the plaintiff." *Alston v. Stamps*, 877 So.2d 259, 262 (La. App. 2nd Cir. 2004).

Ms. Blanchard urges that no probable cause existed to commence or continue the criminal proceedings because there is no evidence that she intended to permanently deprive Mr. Lonero of the property. Julie Blanchard asserts that she had a good faith belief that she owned the property because she thought that the equipment was included in her purchase of 10-40 Diner, Inc., as evidenced by her August 3, 2005 letter to Mr. & Mrs. Lonero. Ms. Blanchard also denies that Mr. Abuelhawa told her that the equipment belonged to the lessor.

Ms. Blanchard cites *Culpepper v. Ballard*, 344 So.2d 110, 112 (La. App. 2nd Cir. 1977), in support of her contention that there was no probable cause for the criminal proceeding. In *Culpepper* the state appellate court affirmed the trial court's decision that a landlord acted without probable cause and with malice in having a tenant arrested and charged with theft of a $12.00 toaster which the landlord had provided to the tenant just prior to Christmas and which the tenant took with him when he moved to another apartment. The landlord contended that he provided the tenant with the toaster because the oven in the apartment was not functioning. The tenant stated that he thought that the toaster had been a gift. The Court concluded that there was no probable cause to believe that plaintiff committed a theft stating:

> Even if defendant reasonably believed that he was the owner of the toaster, under the circumstances he should have just as reasonably believed that there could have been a misunderstanding on plaintiff's part as to ownership. The toaster was moved with plaintiff's other belongings, in plain sight, with defendant watching. It was only moved to plaintiff's apartment across the street. Its value was small. The facts were not such as to cause a reasonable man in the position of defendant to believe that plaintiff committed the crime charged.

*Id. Culpepper* turned on the particular facts presented therein; it is not dispositive here. The quantity and value of the removed property in this case far exceeds that involved in *Culpepper.* Additionally, in *Culpepper* at the time that the landlord delivered the toaster to his tenant, there was no specific agreement addressing the ownership of the toaster. Here however, Ms. Blanchard signed a lease specifically providing that the restaurant equipment is the property of the lessor.

The defendants have submitted evidence establishing that probable cause to initiate and continue the criminal proceeding existed. It is undisputed that Ms. Blanchard: 1) removed the restaurant equipment from the leased premises without the permission of Gregory Lonero; 2) did not advise Gregory Lonero that she had removed the property from the premises; and 3) did not advise Gregory Lonero of the whereabouts of the relocated property. Additionally Article 30 of the lease specifically provides that "Lessee acknowledges that the restaurant equipment upon the leased premises belongs to Lessor." *Id.* at Article 30. There is absolutely nothing ambiguous about that provision. Moreover, it is axiomatic that a person who signs a written contract is presumed to know its contents. *St. Andrews Place, Inc. v. City of Shreveport*, 914 So.2d 1203, 1208 (La. App. 2nd Cir. 2005). "Signatures to contracts are not mere ornaments." *Id.*, citing *Shreveport Great Empire Broadcasting, Inc. v. Chicoine*, 528 So.2d 633 (La. App. 2nd Cir. 1988).

The removal of the property from the leased premises without Mr. Lonero's consent and the lease provision providing that the lessor owns the equipment constitute circumstantial evidence of Julie Blanchard's intent to permanently deprive Gregory Lonero of the equipment, and constitutes probable cause for the initiation of the criminal proceedings. The finding of probable cause is fatal to plaintiffs' claims of malicious prosecution with respect to the initiation of criminal proceedings and eliminates the need to analyze whether Detective Miller and Mr. Lonero acted with

malice in connection with their roles in the initiation of criminal proceeding against Julie Blanchard. Detective Miller and Mr. Lonero are entitled to summary judgment on the claim of malicious prosecution with respect to initiation of the criminal proceedings.

Plaintiffs also assert malicious prosecution claims against Detective Miller and Gregory Lonero for making false statements and misrepresentations to a representative of the District Attorney's office in order to further the prosecution of the criminal proceedings against her, and contend that Detective Miller and Gregory Lonero acted to encourage "the District Attorney's office to proceed with criminal charges after it became obvious to all concerned that there was no legal or factual basis for theft charges against Julie Blanchard. Plaintiffs have not offered any evidence that Detective Miller spoke to anyone in the District Attorney's office at any time. Nor have plaintiffs submitted any evidence indicating that Detective Miller acted in any way which encouraged the continuance of the criminal proceedings. It is true that following the issuance of the arrest warrant Julie Blanchard surrendered two additional items of restaurant equipment to Detective Miller, but the return of the equipment is not an exculpatory act with respect to any element of the crime of theft, including intent.

The facts establishing probable cause for the initiation of the proceedings suffice to establish probable cause for the continuation of the proceedings. Detective Miller's failure to attempt to halt the proceedings following Ms. Blanchard's return of the flat grill and the char-grill does not qualify as an omission which encouraged the continued prosecution of Ms. Blanchard.

Plaintiffs also contend that despite the lack of probable cause to continue the proceedings that Gregory Lonero encouraged a representative to continue to pursue the criminal charges against Ms. Blanchard by, among other acts, making false statements to a representative of the

District Attorney's office. Plaintiffs have not provided any evidence that Mr. Lonero made any false statements to anyone connected with the District Attorney's office. Mr. Lonero admits that he told Chuck Credo, the assistant district attorney handling Ms. Blanchard's the case that he did not want to "drop" the charges against Ms. Blanchard. Doc. 189, Ex. G (Depo. of Greg Lonero), p. 63-64. There is no evidence when Mr. Lonero's conversation with Mr. Credo occurred. However, even assuming that it occurred after Mr. Lonero received Ms. Blanchard's August 3, 2005, letter stating that at the time she removed the equipment she believed that it was hers, probable cause for the proceedings continued to exist. As set out above, circumstantial evidence of Ms. Blanchard's intent to permanently deprive Mr. Lonero of the equipment existed at the initiation of the proceedings, and Ms. Blanchard's "self serving" letter did not eradicate probable cause to continue the proceedings. Gregory Lonero is entitled to dismissal of all claims against him for malicious prosecution.

## CLAIMS OF CONVERSION

Plaintiffs amended complaint alleges that during the search of Julie Blanchard's storage units, some property owned by plaintiffs was removed and has never been returned to plaintiffs. Under Louisiana law, a conversion action "is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation." *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 857 (La. 1998).

In his motion for summary judgment on the claims against him in his individual capacity, Gregory Lonero seeks dismissal of the conversion claim. In opposing that motion Julie Blanchard submitted an affidavit stating that she has viewed photographs "taken by the Jefferson Parish Sheriff's Office at the time her storage facilities were searched on or about August 3, 2005[,] . . ." and that "she has seen several times [sic] of property that were removed from her storage facility that

belong to her that have never been returned to her by the Sheriff's Office or by Greg Lonero." Doc. 189, Ex. M. Plaintiffs have never identified the movable(s) allegedly converted nor provided any evidence that Gregory Lonero had any contact with the property alleged to belong to plaintiffs. Given this lack of evidence, plaintiffs have failed to raise a genuine issue of material fact with respect to the conversion claim. Therefore, Mr. Lonero, is entitled to dismissal of the conversion claim against him in his individual capacity.

The motion for summary judgment filed on behalf of Gregory Lonero in his official capacity and on behalf of Michael Pizzolato, and Michael Miller does not specifically seek dismissal of the conversion claim. The Court nonetheless dismisses plaintiffs' conversion claims as to all defendants because plaintiffs have failed to submit evidence raising a genuine issue of material fact with respect to that claim.

Although the "law of the case" doctrine is not strictly applicable here, the premise for that doctrine, i.e., that litigation should come to an end, applies equally in this case. Despite the fact that plaintiffs filed their conversion claim more than eighteen months ago, plaintiff has not offered any evidence identifying the property they contend the defendants converted. Considering plaintiffs failure to produce such evidence in response to Gregory Lonero's motion seeking dismissal of this claim against him in his individual capacity, the Court concludes that plaintiff will not be unduly prejudiced by the dismissal of the conversion claim against the remaining defendants.

<u>CLAIMS AGAINST NEWELL NORMAND</u>

Plaintiffs allege claims against Newell Normand in his individual and official capacity, as the successor to Sheriff Harry Lee. "[A] successor sheriff may be held liable in his official capacity for the torts for which his predecessor in office was liable in his official capacity." *Burrell v. Adkins*,

2007 WL4699166, *5 (W.D. La. October 22, 2007).

Plaintiffs allege that the Sheriff condoned and ratified a custom or policy of failing to adequately screen, hire, train, supervise, discipline, or control employees of the JPSO and that he condoned and ratified a custom or practice of using deception to mislead magistrates to issue both search warrants and arrest warrants.

"[A] suit against a government officer 'in his official capacity' is the same as a suit against the governmental entity for which the officer is an entity. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n. 2, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)(some internal quotations and citations omitted). A local government is liable under §1983 for its policies that cause constitutional torts. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38. "These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'" *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999), quoting *Monell,* 463 U.S. at 694, 98 S.Ct. 2018. The task is to "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School District*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

State law determines whether a governmental official is a policymaker for the local government in a particular area. *Burge v. St. Tammany*, 187 F.3d at 468. Under Louisiana law, the sheriff is a final policymaker. *Craig v. St. Martin Parish Sheriff,* 861 F.Supp. 1290, 1300 (W.D. La. 1994), citing La. Const. Art. 5, §27 ("[The sheriff] shall be the chief law enforcement officer in the parish.").

The "official policy"[6] requirement may be satisfied in one of the following ways: (1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) where no "official policy" was announced or promulgated but the action of the policymaker itself violated a constitutional right; or (3) where the policymaker fails to act affirmatively, but the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of the existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *Id.* Plaintiffs' allegations against Sheriff Newell Normand fall within the third category.

To survive this motion for summary judgment, plaintiffs must bring forth sufficient evidence to raise a genuine issue of material fact concerning whether the sheriff failed to train or supervise his subordinates. *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008). Plaintiffs have not introduced any evidence concerning whether the sheriff failed to adequately train, screen, hire, supervise, discipline or control his deputies. Nor have plaintiffs produced any evidence raising a genuine issue as to whether the Sheriff had a practice of using deception to mislead magistrates in order to obtain search warrants and arrest warrants. Considering plaintiffs lack of evidence, Newell Normand is entitled to summary judgment on all plaintiffs' claims against him. Accordingly,

**IT IS ORDERED** that the "Motion for Summary Judgment" filed on behalf of defendants Gregory Lonero, in his official capacity as a Jefferson Parish law enforcement officer, Michael

---

[6] An "official policy" is "either a policy statement, or ordinance, regulation, etc. that has been officially adopted by a policy-maker, or a persistent, widespread practice of officials or employers, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipalities' policy." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).

Pizzolato, Michael Miller, and Sheriff Newell Normand, as legal successor to original defendant Harry Lee, (Doc. 88) is GRANTED;

**IT IS FURTHER ORDERED** that "Motion for Summary Judgment" filed on behalf of defendant Gregory Lonero, in his individual capacity (Doc. 185) is GRANTED;

**IT IS FURTHER ORDERED** that judgment be entered in favor of defendants Gregory Lonero, Michael Pizzolato, Michael Miller, and Sheriff Newell Normand and against plaintiffs Julie Blanchard, Sophisticated Salads, L.L.C. d/b/a Sophisticated Care & Grill, and 10-40 Diner, Inc. dismissing with prejudice all of plaintiffs' claims.

New Orleans, Louisiana, this 28th day of May, 2009.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE